# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD HIGGINS,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | 1:09-cv-00709 GSA<br><br>ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |

## **BACKGROUND**

Plaintiff Donald Higgins ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

///

///

---

[1] Both parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 6 & 8.

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed an application for supplemental security income in 1995.[3] AR 35, 102. An ALJ issued an adverse decision on September 25, 1996.[4] AR 12, 42. During this proceeding, the ALJ determined Plaintiff had a "residual functional capacity for light work with seizure precautions." AR 12.

Plaintiff re-filed his application for supplemental security income on or about June 7, 2005, alleging disability beginning August 1, 2002, due to physical impairments. AR 34. His application was denied initially and on reconsideration. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 29, 34-35. ALJ James P. Berry held a hearing on May 15, 2007, and issued an order denying benefits on May 24, 2007. AR 12-19, 151-174. On February 27, 2009, the Appeals Council denied review. AR 3-5.

**Hearing Testimony**

ALJ Berry held a hearing on May 15, 2007, in Fresno, California. AR 151. Plaintiff was represented by attorney Dennis Bromberg. Vocational Expert ("VE") Jose Chaparro also testified. AR 169-171. Plaintiff was born on November 5, 1955. AR 154. He was fifty one years old at the time of the hearing. AR 154. Plaintiff is a high school graduate with some college experience but he did not obtain a college degree. AR 155.

Plaintiff lives with his wife and eighteen year old son. AR 163. His wife is receiving Social Security benefits and has diabetes. AR 163-164. His son is a high school graduate and works part time. AR 164.

///

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] The exact date Plaintiff initially filed his application for benefits is not clear from the record.

[4] The principles of res judicata apply to administrative decisions and in order to overcome the presumption of continuing non-disability arising from a prior ALJ's finding of non-disability, plaintiff must prove "changed circumstances" indicating a greater disability. *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988). A change circumstance includes a change in the claimant's age category under 20 C.F.R. 404.1563 or 416.963, an increase in the severity of the claimant's impairment(s), the alleged existence of an impairment(s) not previously considered, or a change in the criteria for determining disability. Acquiescence Ruling 97-4(9).

Plaintiff's daily activities involve maintaining the house, which includes doing the dishes, sweeping, mopping, vacuuming, dusting, and polishing furniture. AR 164. He also acts as a chauffeur to his wife because she cannot drive. AR 164. Plaintiff has to stop and rest while doing certain chores; for example, Plaintiff can wash dishes for twenty minutes but then needs to take a break. AR 164. Not all of the chores are performed every day. AR 164. The most time Plaintiff spends on chores on a given day is two and a half hours, excluding breaks. AR 165. Plaintiff's only recreational activity is playing cards with friends. AR 165. Plaintiff has no other activities outside the home except visiting sisters, nephews and nieces on Mother's Day, Father's Day, Thanksgiving and Christmas. AR 165.

Plaintiff last worked as a self-employed landscaper from 2000 to 2003. AR 87, 155. His clientele included private residences and commercial businesses. AR 168. His job duties included taking care of lawns, mowing, edging, trimming, pruning, and weeding. AR 168.

Prior to that time, Plaintiff was a stay at home father, raising his son. AR 155-156. Plaintiff ceased his self-employment after having a heart attack. AR 156. Since that time, Plaintiff suffers from twenty-four hour chest pain. AR 156-157. The pain gets worse when Plaintiff performs tasks that causes his heart rate to increase such as cleaning the house. AR 157. Plaintiff described the pain as "getting a thrust punch in [his] chest." AR 157. Mental stress also aggravates the pain; Plaintiff described the hearing with the ALJ to be "[u]ncomfortable." AR 158.

Six months after his heart attack, Plaintiff attempted to work in landscaping for Bianci Vineyards, but he was unable to keep up. AR 158. Whenever his heart rate would increase he had to take a break, causing him to take twice as long to complete a job. AR 158. His employment with Bianci Vineyards lasted roughly three months. AR 158. He claimed he could not push a lawn mower or turn it like he used to. AR 166. His employers noticed and recommended that he stop. AR 166. Plaintiff felt that his low energy levels and the chest pain were his biggest problems. AR 166.

Plaintiff also suffers from a seizure disorder requiring him to take Phenobarbital and Dilantin. AR 159. This last seizure occurred twelve years ago. AR 159. In response, Plaintiff's

cardiologist told him to cut back on his smoking and not to engage in activities that required physical exertion. AR 159. However, Plaintiff still smokes five cigarettes a day which is a reduction from the two packs of cigarettes per day he previously smoked. AR 159-160.

Plaintiff also suffers from constant back pain which originates roughly an inch above his waistline and travels straight up his back to the top of his neck. AR 160. It is a shooting pain that is aggravated by "[a]ny lifting," and any sudden movements. AR 161. Plaintiff had back surgery in 1990. During this procedure, the surgeon filed off parts of swollen discs to relieve pressure "on the nerve." AR 163. However, Plaintiff claims the surgery was not helpful. AR 163.

When asked how much he could lift without hurting himself, Plaintiff responded that he could only lift a half gallon of milk. AR 161. Lifting an entire gallon required both hands, and he could only carry it a short distance, such as from "the shelf to the basket." AR 161. Plaintiff stated he has difficulty raising his left arm. AR 167.

Plaintiff's back pain is aggravated by cold and rainy weather which causes shooting pain down his left leg into his left foot. AR 161. He also feels shooting pain down his leg when he walks, or "overwalk[s]." AR 162. "Overwalking" is walking over half a mile. AR 162. When Plaintiff walks, he usually takes a break halfway through. AR 167.

Plaintiff is able to stand for approximately three hours in an eight hour period. AR 167. However, he experiences shooting pain in his legs after standing for more than fifteen to twenty minutes. AR 162. He is able to sit without experiencing pain as long as he sits "all the way back," and does not lean forward all the way. AR 162. Plaintiff is able to sit for long periods as a long as he puts pressure on his back. AR 162. The total amount of time Plaintiff can sit is four hours. AR 167.

Plaintiff takes 800 milligrams of Ibuprofen three times a day to help with the back pain. AR 162. The Ibuprofen does not erase the pain completely, but "just slows it down." AR 163. Plaintiff also takes 700 milligrams of aspirin every six hours for his heart and pain. AR 167. Other medications include Plavix, Lipitor, and Enemal in addition to the Phenobarbital and Dilantin. AR 167. None of the medication Plaintiff takes gives him any side effects. AR 163.

4

VE Chaparro also testified at the hearing. AR 169. The VE indicated that Plaintiff's past job as an industrial/commercial groundskeeper was unskilled medium work. AR 169. ALJ Perry asked the VE to consider a hypothetical worker of Plaintiff's age, education, and past relevant work with combinations of severe impairments and retention of a residual functional capacity to occasionally lift and carry twenty pounds, and ten pounds frequently. AR 170. The worker could also stand, walk, and sit for six hours. AR 170. In addition, the worker must avoid exposure to unprotected heights and dangerous moving machinery. AR 170. When asked whether this worker could perform the Plaintiff's past work, VE Chaparro stated that he could not. AR 170. However, he could perform other jobs within the national economy that required light and unskilled work such as: cashier II; fast food worker; and office helper. AR 170. There are 23,200, 33,500, 4,200 of those jobs, respectfully, in California; and 205,900, 384,600, and 32,900 of those jobs, respectively nationally. AR 170.

In a second hypothetical, the VE was asked to assume the same factors as the first hypothetical, but to assume this worker could lift and carry approximately eight pounds. AR 170-171. The worker could also sit for four hours, stand for three, and walk approximately one mile. AR 171. When asked whether this worker could perform the Plaintiff's past relevant work, VE Chaparro stated that he could not. AR 171. VE Chaparro opined this worker could not perform any other job which exists in the national economy. AR 171.

In a third hypothetical, the VE was asked to assume the same factors as the previous hypotheticals, but to assume this worker was limited to carrying ten pounds "occasionally and frequently," with no restrictions on sitting activities, and could stand or walk a total of two to four hours out of an eight-hour work day. AR 171. When asked whether this worker could perform Plaintiff's past relevant work, the VE replied that he could not. AR 171. However, other jobs within the national economy were available but they would be classified as sedentary work. AR 171.

///

///

**Medical Record**

*Dr. Steven Stoltz*

Dr. Steven Stoltz, MD, a Board Certified Physician of Internal Medicine for the Department of Social Services, performed a consultative examination of Plaintiff on September 17, 2005. AR 118. Dr. Stoltz noted a history of seizures since the 1970's, with the last seizure occurring approximately twelve years ago. AR 118. Approximately four years ago, the Plaintiff was hospitalized at St. Agnes Medical Center for a possible heart attack. AR 118. An angiogram was performed.[5] AR 118. During the exam, Plaintiff stated he had constant twenty four-hour chest pain as if lightly punched, but that he had not seen his heart specialist in two years. AR 118. Dr. Stoltz noted that Plaintiff was taking only aspirin for his heart and no other medication. AR 118.

Dr. Stoltz stated Plaintiff had a long history of back pain which radiates down into both legs, and worsens when performing physical activities such as walking. Plaintiff does not take medication for back pain and he had no follow-up since a failed surgery in 1988-1989. AR. 118-119. Dr. Stoltz noted that Plaintiff smoked twenty cigarettes a day. AR 119.

The physical examination led Dr. Stoltz to conclude that Plaintiff was "healthy-appearing, well-developed, well-nourished," and in "no apparent distress." AR 120. There were no cardiovascular abnormalities such as irregular heart tones or murmurs. AR 121. When seated, Dr. Stoltz stated Plaintiff complained of lower back pain "with radiation of pain with bilateral knee extensions." AR 121. In the supine position, Plaintiff also complained of bilateral back pain. AR 121. While possessing slow range of motion, there were no restrictions. AR 121. Plaintiff's gait was normal. AR 122. Dr. Stoltz diagnosed Plaintiff with seizure disorder, possible coronary artery disease, and complaints of lower back pain. AR 122.

Dr. Stoltz also concluded that Plaintiff had good control of his seizures, and could operate heavy machinery "very well," as long as the proper medications were taken. AR 123. The complaints of constant chest pain did not seem to be heart related, given that Plaintiff had not

---

[5] Plaintiff may also have had angioplasty. The record is not clear in this regard. AR 118.

6

seen a cardiologist in several years and could be related to musculoskeletal and/or gastrointestinal problems. AR 123. Dr. Stoltz recommended lifting and carrying limitations of ten pounds occasionally or frequently. AR 123. Furthermore, Dr. Stoltz opined that Plaintiff did not need sitting restrictions, but Plaintiff "could stand or walk at a total of two to four hours in a normal eight hour workday." AR 123.

### *Dr. Brian Ginsburg*

On November 4, 2005, Plaintiff was evaluated by Dr. Brian Ginsburg, a state agency non-examining physician, who noted that Plaintiff could lift and/or carry twenty pounds occasionally, lift and/or carry ten pounds frequently, stand and/or walk for a total of about six hours in an eight hour work day, sit with normal breaks up to six hours, with no pushing or pulling restrictions. AR 125. Plaintiff could never climb ramps, stairs, ladders, ropes or scaffolds but there were no postural limitations for balancing, stooping, kneeling, crouching or crawling. AR 126. No other limitations were identified, except Dr. Ginsburg's recommendation that Plaintiff avoid concentrated exposure to hazards such as machinery and unprotected heights due to "usual seizure precautions." AR 127-128. Dr. Ginsburg also noted that his conclusions regarding Plaintiff's limitations were significantly different from Dr. Stoltz's, and that Dr. Stoltz's conclusions were based on "[n]o new and material evidence." AR 130. Accordingly, Dr. Ginsburg's Residual Functional Capacity ("RFC") was based on the previous ALJ's decision in which it was determined Plaintiff could perform light work. AR 130, 133.

### *Dr. Eugene Huang*

On December 22, 2005, Dr. Eugene Huang of the Comprehensive Pain Management Center in Fresno, CA, wrote to referring physician, Dr. Husam Kaileh, regarding Plaintiff. AR 140. Dr. Huang noted Plaintiff's medical history concerning his back pain, which stemmed from carrying a very heavy object. AR 140. Dr. Huang noted that Plaintiff slept four hours a day, smoked one pack of cigarettes per day, drank caffeinated beverages, but did not drink alcohol. AR 140. Plaintiff was taking seventy five milligrams of Plavix everyday for his prior heart attack, Phenobarbital for his epilepsy three times a day, 100 milligrams of Phenytoin five times a day for his seizure, ten milligrams of Lipitor once every night, five milligrams of Enalapril for

his heart once a day, ten milligrams of Cyclobenzaprine three times a day, and 800 milligrams of Ibuprofen three times a day to help Plaintiff sleep. AR 140.

Dr. Huang noted that Plaintiff's pain was nine out of ten on a visual analog scale and Plaintiff "[was] in some discomfort." AR 141. Dr. Huang also opined that Plaintiff's range of motion, rotation and lateral bending had decreased. AR 141. Plaintiff's sensory in his lower extremities also decreased as Plaintiff was unable to distinguish pinpricks, light touches, and some temperature in his bilateral lower extremities. AR 141. Plaintiff stated he had been like that for the previous two to three years. AR 141. Dr. Huang diagnosed Plaintiff with a history of chronic lower back pain and lumbosacral radiculopathy. AR 141. Dr. Huang recommended an urgent MRI of Plaintiff's back to check for worsening compression on Plaintiff's lower spine, and possible epidural steroid injections. AR 141.

Plaintiff visited Dr. Huang a second time on March 28, 2006, who noted the MRI showed deformities of the thoracic spine consistent with Scheuermann's disease. AR 138. The MRI also showed bulged discs. AR 138. Dr. Huang noted that Plaintiff's pain was eight out of ten, that Plaintiff had difficulty keeping his eyes open, and that he seemed slightly sedated. AR 138. Dr. Huang noted a "somewhat worrisome" concern of Plaintiff's "worsening pain and weakness of his lower extremities," and recommended a neurological consult, aqua therapy, and epidural steroid injections. AR 139.

Plaintiff visited Dr. Huang a third time on May 10, 2006. AR 136. Dr. Huang noted Plaintiff's pain was eight out of ten. AR 136. While Plaintiff had been referred for injections several times in the past, Plaintiff either did not attend the appointments or cancelled the procedure. AR 136. Plaintiff complained of neck pain shooting down into his lumbar spine with bilateral leg radiculopathy. AR 136. Dr. Huang recommended Plaintiff see a neurologist to evaluate his neck and radiculopathy, and to rule out any type of central peripheral neuropathy. AR 136. Dr. Huang also suggested L4-L5 epidural steroid injections, and that Plaintiff increase his Cymbalta to sixty milligrams at bedtime to improve Plaintiff's radiculopathy. AR 136.

///

///

**ALJ's Findings**

After considering the entire record, the ALJ determined that Plaintiff had not engaged in a substantial gainful activity since August 1, 2002, and had severe impairments including a seizure disorder, lumbar degenerative disc disease, and ischemic heart disease. AR 14. However, the impairments did not meet the listed impairments. AR 14.

ALJ Berry also found that Plaintiff had not overcome the presumption of continuing nondisability by proving changed circumstances since the initial ALJ's finding that Plaintiff was not disabled. AR 12. Although Plaintiff's age changed on November 5, 2005, and the presumption of nondisability was rebutted, the ALJ found Plaintiff had an RFC to perform light work. AR 12. Specifically, the ALJ found that Plaintiff was able to occasionally lift and carry up to twenty pounds, frequently lift and carry up to ten pounds, and sit, stand, and/or walk for six hours while avoiding exposure to unprotected heights and dangerous moving machinery. AR 15. Given this RFC, the ALJ found that Plaintiff could not return to his past work; however, the ALJ found Plaintiff could perform jobs that exist in the national economy including cashier II, fast food Worker, and office helper. AR 18. Thus, Plaintiff was not disabled as defined in the Social Security Act. AR 19.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

9

This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 CFR § 416.920(c)); (3) does not have an impairment or combination of impairments which meets or equals ones of the impairments set forth in Appendix 1, Subpart P (20 CFR Part 404); (4) cannot perform his past relevant work as a as groundskeeper or yard worker; yet (5) retained the RFC to perform a full range of light work. AR 14-18.

## DISCUSSION

Plaintiff argues that the ALJ failed improperly discredited Plaintiff's testimony and that the ALJ improperly rejected Dr. Stoltz's opinion. (Doc. 11 at 2, 12). The Court addresses each of these arguments below.

**A.     *Plaintiff's Credibility***

Plaintiff argues the ALJ failed to articulate clear and convincing evidence reasons for rejecting Plaintiff's testimony. Doc. 11 at 8. The Commissioner responds that the ALJ properly considered Plaintiff's subjective complaints and properly determined Plaintiff was not credible. Doc. 12 at 4.

A two step analysis applies at the administrative level when considering a claimant's credibility. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id*. at 1281-82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). These factors include the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).

///

///

In applying this analysis, the ALJ found that Plaintiff had severe impairments including a seizure disorder, lumbar degenerative disc disease, and ischemic heart disease. AR 14. This finding satisfies the first step of the credibility analysis. *Smolen*, 80 F. 3d at 1281-1282.

With regard to the second step of the analysis, the ALJ noted the following:

> To the extent [Plaintiff] alleges physical impairments which virtually render him incapable of working, I do not find his testimony credible or supported by the medical evidence of record. His seizure disorder is 'stable.' The claimant's last seizure occurred [twelve to thirteen] years ago. He does not have a valid driver's license, and drives. While he alleges frequent chest pains, the claimant does not take nitroglycerin. I also note he is not undergoing any aggressive medical treatment therefor, as you would expect given his subjective complaints. In fact, there is very little follow up treatment related to his heart condition. I also note [Plaintiff] has not been evaluated by a treadmill stress test, echocardiogram, or electrocardiogram, etc., in reference to his complaints. Furthermore, there was a 2-year period where he had not followed up with his cardiologist, and he was only taking aspirin at the time. Also diminishing [Plaintiff's] credibility, [Plaintiff] continues to smoke against medical advice. As to his back impairment, the claimant is not being considered as a candidate for any additional surgery. On the contrary, an MRI showed a mere disc bulge[,] and it does not appear he underwent epidural steroid injection. Moreover, he is not receiving treatment consistent with a chronic pain disorder such as the use of a TENS unit. Nor is he [undergoing] physical therapy or other similar treatment. Furthermore, he is not taking medication normally associated with severe pain. The claimant does not ambulate with an assistive device. Further diminishing his credibility . . . [Plaintiff] does a wide range of activities of daily living not consistent with his claim of total disability including household chores, cooking, and driving. The claimant described himself as a stay-at-home dad."
> AR 17 (citations omitted).

A review of the above reasons demonstrates that the ALJ gave clear and convincing reasons for rejecting Plaintiff's testimony. Medical impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for benefits. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Here, Plaintiff testified that his seizures were under control with medication, and he has not had a seizure in over twelve years. AR 159. Dr. Stoltz concluded the same, as long as Plaintiff took his medication, and it appears that Plaintiff has done so. AR 123, 159. Plaintiff's compliance with taking his medication is evidenced by the fact that he has a driver's license and drives his wife frequently. AR 159, 164. The seizures appear to be well within Plaintiff's control and the ALJ properly relied on this evidence to discredit the Plaintiff.

///

Similarly, Plaintiff complains of twenty-four chest pain, comparing the feeling to "getting a thrust punch in your chest," as well as constant shooting pain in his back. AR 156-157. However, in response to this pain, Plaintiff only takes 800 milligrams of Ibuprofen three times a day and 700 milligrams of Aspirin every six hours. AR 162-163,167.[6] Pain medications prescribed in the past were also limited to 600 milligrams of Ibuprofen. AR 142. Despite Plaintiff's alleged extreme pain, it had been two years since he last saw a heart specialist. AR 118, 123. And as the ALJ noted, Plaintiff failed to comply with the recommended epidural steroid injections, nor has he undergone treatment consistent with a chronic pain disorder to treat his back pain. AR 17, 118, 123, 136, 139. "Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F. 3d 1428, 1434 (9th Cir. 1995)); *Tommasetti v. Astrue*, 533 F. 3d 1035, 1039 (9th Cir. 2008) (ALJ properly inferred that the claimant's pain was not as all-disabling as he reported in light of fact that the he did not seek an aggressive treatment program); *Meanel v. Apfel*, 172 F. 3d 1111, 1114 (9th Cir. 1999) (subjective pain complaints properly discredited where claimant complained of intense pain but only received minimal and "conservative" treatment).

Lastly, the ALJ properly concluded that Plaintiff's wide range of daily activities discredited his claims of total disability. AR 17. A claimant is not required to be completely incapacitated to qualify for disability benefits; however, daily home activities are relevant evidence to consider in a credibility analysis where such activities are transferable to the workplace. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). For example, in *Burch v. Barnhart*, the claimant was able to care for her own personal needs, cook for herself, clean and shop. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). The ALJ found her "quite functional." *Id*. In *Orteza v. Shalala*, 50 F.3d 748 (9th Cir. 1994) (per curiam), the ALJ's consideration of claimant's "various household chores such as cooking, doing the dishes, going to the store, visiting relatives and driving," was proper. *Orteza*, 50 F.3d at 750. *See also Morgan*

---

[6] Although Plaintiff makes brief reference to taking methadone, it is unclear whether it was being taken on a regular basis. AR 138, 141.

*v. Apfel*, 169 F.3d 595, 600 (9th Cir.1999) (Claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work).

In this case, Plaintiff's daily activities are transferable to the workplace because he is able to provide for his own personal needs, and on occasion, those of his wife. AR 164-165. Plaintiff testified that he is able to shop for groceries, wash dishes, sweep and mop floors, vacuum, dust, and polish. AR 164. Plaintiff is also capable of visiting his friends to play cards, and visit family members on holidays. AR 165, 166. Although Plaintiff testified that he could only do chores for two and a half hours at a time, it appears that Plaintiff is "quite functional." *Burch v. Barnhart*, 400 F.3d 680, 681 (9th Cir. 2005). "If a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." *Fair v. Bowen*, 885 F.2d at 603.

Although evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to the claimant, it is not the role of the Court to redetermine Plaintiff's credibility de novo. If the ALJ's interpretation of evidence was rational, as is was here, the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. Accordingly, the Court finds that the ALJ set forth sufficient reasons to discredit Plaintiff's subjective complaints.

**B.**     ***Rejection of Examining Physician Dr. Stoltz's Opinion***

Plaintiff argues that the ALJ improperly dismissed Dr. Stoltz's findings without explanation, and instead relied on Dr. Ginsburg's in support of his nondisability finding. (Doc. 11 at 12). Specifically, Plaintiff argues that the ALJ improperly ignored Stoltz's limitations of lifting and carrying ten pounds frequently and occasionally, and standing or walking two to four hours in an eight hour day. *Id*. Instead, the ALJ favored Ginsburg's assessment of lifting twenty pounds occasionally, ten pounds frequently, and walking or standing for six hours per eight hour day with normal breaks. AR 18. If the ALJ had adopted Dr. Stoltz's opinion, Plaintiff would be eligible for disability benefits.

///

1   As a preliminary matter, although Plaintiff's brief inconsistently refers to Dr. Stoltz as a
2   treating and examining physician, the record is clear that Dr. Stoltz is an examining physician.
3   (Compare Doc. 11 at pgs 6 and 10); AR 118.  Dr. Ginsburg, on the other hand, is a non-
4   examining physician.  AR 124-131.

5   Medical opinions by examining and non-examining physicians are accorded different
6   weight. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).  Opinions of examining
7   physicians are given more weight than that given to a non-examining physician.  If the ALJ
8   rejects an examining physician's opinion in favor of a non-examining physician's opinion, he
9   must provide specific, legitimate reasons based on substantial evidence in the record.  *See*
10  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747,
11  752-53 (9th Cir. 1989).  This can be done by setting out a detailed and thorough summary of the
12  facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.
13  *Magallanes v. Bowen*, 881 F.2d at 751.  The ALJ cannot just set forth his conclusions, but must
14  give his own interpretations and explain why they, rather than the doctors, are correct. *Embrey v.*
15  *Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

16  In this case, the ALJ rejected Dr. Stoltz's opinion without providing specific and
17  legitimate reasons. AR 17.  When adopting Dr. Ginsburg's opinion, the ALJ's merely stated, "as
18  for the opinion evidence, the Disability State Agency (DSA) consultants adopted the ALJ's
19  decision that claimant had the residual functional capacity for light work with seizure precautions
20  . . . which is afforded significant weight." AR 17.  However, this was the only explanation given
21  for accepting Dr. Ginsburg's conclusions and rejecting Dr. Stoltz's findings.

22  Defendant argues that the ALJ assigned proper weight to Dr. Stoltz's opinion because Dr.
23  Ginsburg's report stated there was no new and material evidence to support Stoltz's conclusions.
24  (Doc. 12 at 7).  In addition, Defendant contends that Dr. Stoltz's physical examination did not
25  support the limitations he assessed. *Id*.  In particular, Dr. Stoltz's found Plaintiff's range of
26  motion was normal and that he had full motor strength, however, he opined that Plaintiff could
27  only lift only ten pounds and could stand or walk for two to four hours per day. *Id*. Although
28  these may have been reasons why the ALJ rejected Dr. Stoltz's opinion, these conclusions were

not articulated by the ALJ.  The Court may not speculate as to the ALJ's findings or the basis of the ALJ's unexplained conclusions.  *Lewin v. Schweiker*, 654 F.2d 631, 634-35 (9th Cir. 1981).  A reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the Commissioner.  *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citing *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001)).

Here, the ALJ merely stated a conclusion that he afforded Dr. Ginsburg's assessment significant weight without giving a specific reasons for doing so.  This is an insufficient reason for rejecting an examining physician's opinion.  Finally, Dr. Ginsburg found that there was no new and material evidence since Plaintiff's prior hearing, and the previous ALJ's findings should be adopted.  However, the initial ALJ's decision is not contained in the record for this Court's review.  Although ALJ Berry briefly references the first ALJ's decision, the reasons for the first ALJ's determination were not articulated.  Therefore, it is not possible for this Court to adequately assess Dr. Ginsburg's opinion and the medical evidence in this case.

For the reasons stated above, the Court concludes that the case must be remanded for re-evaluation of the medical evidence.  In reconsidering the medical evidence, the ALJ may order additional medical evaluations if necessary, and must give specific and legitimate reasons if he rejects Dr. Stoltz's opinion.

## **REMAND**

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."  In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate."  *Id*. (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no

useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed."). Here, the Court finds that remand for further proceedings is proper due to the ambiguity of the record and to allow the ALJ to properly review all of the medical evidence as outlined above.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Donald Higgins and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **June 4, 2010**              /s/ **Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE